## Sartori v. Gradison Auto Bus Co., Inc.

*Ronald H. Watzman*, of Allegheny County, for plaintiffs.

*Stephen D. Marriner*, for defendants.

SWEET, P. J., May 5, 1967.—This case presents, on preliminary objections, a single, somewhat unusual question. Marcia J. Kunkel was involved in an accident on December 24, 1963, which gave rise to a trespass action. On September 12, 1964, she married William R. Sartori. On December 20, 1965, Marcia and her husband filed suit against Gradison Auto Bus, defendant, for the 1963 accident. Gradison moved to dismiss the action insofar as William R. Sartori is concerned. He was not factually involved; his only role is that of a plaintiff for purely derivative damages.

The question for decision is: "When marriage occurs after the accident, may the husband-plaintiff claim for all of the medical treatment and attention as well as for loss of aid, comfort, society and services?"

There is no direct authority on point. Orga v. Pittsburgh Railways Company, 155 Pa. Superior Ct. 82 (1944), purported [1] to deal with this question and achieved a result favorable to plaintiff. This case was recently criticized in Neuberg v. Bobowicz, 401 Pa. 146 (1960). Neuberg described the loss of consortium as an

---

[1] The Orga appeal was quashed because the husband's suit was never questioned at the lower court level. In Neuberg, op. cit., Justice Eagen said, "But that court [in the Orga case], referring to the husband's right to recover under those circumstances had timely objection been made, said at 85: 'As to compensation for the loss of his wife's services, there is very respectable authority in other jurisdictions to support a verdict for that, too.' This bit of dictum in Orga was specifically rejected by a court of inferior jurisdiction in Donough v. Vile." This dilutes the authority of Orga to such a place that we can hardly taste it.

"anachronism" and held that a married woman has no cause of action in Pennsylvania for the loss of her husband's consortium. In accordance with what we feel to be the spirit of the Neuberg decision, we believe we should sustain the preliminary objections here. Long ago, Lord Coke is reported to have said that husband and wife are one and he is that one, but this aphorism accords with neither the theory nor the practice of the present era.[2]

To assign a woman's bills to her cause of action when she is single, but then take them away from her when she subsequently marries, seems to us a downgrading of her status in the family quite inconsistent with the spirit of the age.[3]

---

[2] "We are advised that the trend of the hour is toward the complete and universal emancipation of women and that this end is, to a large extent, now an accomplished fact. Of that we have been aware. The roots which at one time, if ever, gave nurture and a legitimate birth to the husband's right to assert a claim for loss of consortium have long since wizened and died. They owe their origin to a seed of thought which, when viewed by the eyeglass of the present day, none should accept, much less implant anew. . . .

"That the woman today is not regarded as she was at common law is too obvious for comment. The husband's right to recover on this theory is without present day justification. The historical fictions have been shattered. The pillars which for decades had been regarded as lending support to this monument to the lord are today so effectively undermined by remedial legislation which recognizes the status of the wife as equal to that of her spouse that, in an increasing number of jurisdictions, they are being razed rather than looked to for further and extended service": Neuberg at pages 149-50.

[3] The Act of July 15, 1957, P. L. 969, 48 PS §32.1 provides: "Hereafter, a married woman shall have the same right and power as a married man to acquire, own, possess, control, use, convey, lease or mortgage any property of any kind, real, personal, or mixed, either in possession or in expectancy, or to make any contract in writing or otherwise, and may exercise the said right and power in the same manner and to the same extent as a married man."

In Quinn v. Pittsburgh, 243 Pa. 521, as long ago as 1914, the Supreme Court said: "The right to recover for loss of companionship is confined to cases where a husband sues for injuries *to his wife*." (Italics supplied.) Marcia was not Mr. Sartori's wife at the time of the accident. If he receives and squanders the money to pay her doctor and hospital bills, it seems to us an idle bit of conceptualism to answer that he is the one legally responsible for them. Is she not still liable to the doctor from her separate property if she has any?

The Supreme Court in Donoghue v. Consolidated Traction Company[4] said, "There is no natural right in one person to damages for injury to another." It would seem, therefore, that it is unwise to take the woman's right to collect for her own doctors' bills, hospital bills, away from her solely because of the intervening coverture.

What we have said here receives support, by analogy at least, in Donough v. Vile, 61 D. & C. 460 (1947), and Anderson v. Rogers, 21 D. & C. 2d 13 (1959).

In Donough, supra, Judge Alessandroni said, "It would therefore appear that where the marriage relationship does not exist at the time of the tort, a cause of action cannot be created by a marriage subsequent thereto."

In Anderson, supra, one Pearline Wheeler divorced her first husband after the filing of a trespass action for personal injury. Before trial, she sought to substitute her second husband, John Barnes, whom she had married by then. Judge Alexander said this: "Plaintiffs argue that the requested amendment of names is not tantamount to a new cause of action and that it does not bring a new party into the case.

---

[4] 201 Pa. 181 (1902), cited with evident approval in Neuberg, supra.

"To so find, the court would have to conclude that Pearline Wheeler's second husband, John Barnes, 'inherited' a place in this action from the former husband, John Wheeler, when he married the said Pearline Wheeler in June 1957, and that the said John Wheeler 'forfeited' his cause of action at the time of the second marriage of his former wife."

The court concluded that the proposed substitution of husbands gave rise to a new cause of action barred by the Statute of Limitations. This case isn't authority for us, but it illustrates the sort of okefenokee which plaintiffs' position would lead us into here. Some of these were explored at oral argument.

It seems to us that the way out is clear and simple. When the woman incurs injuries prior to her marriage, the right to recover for the bills should be considered her property and her cause of action. She should plead it and if she proves it, collect it. A subsequent husband should not acquire any right to sue for loss of consortium. He should not be entitled to marry a cause of action. The tortfeasor, we are frequently told, takes his victim as he finds him. The victim should not acquire new parties as she proceeds along the roads of romance.

In this instance, the husband should, if he has actually paid or separately from his wife contracted to pay for treatment arranged subsequent to marriage, be permitted to plead the same. It should be done with specificity and clarity. In order to avoid confusion or duplicitousness, he should not, however, make a claim for any item readily susceptible to pleading and proof by her.

### ORDER

Accordingly, the second count of the complaint of William R. Sartori et ux. is stricken, but in order that this will not enure to the benefit of the putative tortfeasor, we grant leave to Marcia J. Sartori to make such amendment as she may deem necessary to ensure that

all items of special damage accountable to her injury are properly pled in her complaint.

If husband-plaintiff William R. Sartori has any item of special damage which cannot be properly claimed by Marcia J. Sartori, leave is granted to amend in order that such may be stated. Any such amendment shall be filed within 20 days from the date hereof.